## STATE vs. JAMES H. COATES.

1. CRIMINAL LAW—EVIDENCE—QUESTION FOR JURY.

The jury are the judges of the evidence, and of the credibility of the witnesses, and of the weight of their testimony.

2. ANIMALS—CONVERSION—CRIMINAL RESPONSIBILITY.

To justify a conviction, under *Rev. Code*, 1852, amended to 1893, *p*. 944 (17 *Del. Laws, c*. 228) § 1, punishing any person who shall unlawfully, or without first having obtained the consent of the owner or legal proprietor, take possession of or drive off any horse, the evidence must show that accused, without the consent of the owner, directly or indirectly, took possession of or drove off a horse, and where accused had reasonable cause to and did believe that he was the lawful owner of the horse, when he drove it away, by reason of a contract with a minor, ratified by the father, who was the owner, he could not be convicted.

3. CRIMINAL LAW—PRESUMPTION OF INNOCENCE.

One is presumed innocent until his guilt is established beyond a reasonable doubt, and the state has the burden to satisfy the jury of the guilt of accused.

4. CRIMINAL LAW—"REASONABLE DOUBT".

A "reasonable doubt" is a doubt growing out of evidence, and such a doubt as controls reasonable men in the ordinary affairs of life.

5. CRIMINAL LAW—CONFLICTING TESTIMONY—QUESTION FOR JURY.

Where there is conflict in the testimony, the jury must reconcile it, if they can, and, if they cannot, they must accept the part which, from the circumstances, they deem to be most worthy of belief.

(*February* 9, 1911.)

Judges BOYCE and CONRAD sitting.

*Frank M. Jones*, Deputy Attorney General, for the state.

*Robert C. White* and *James M. Tunnell* for the defendant.

Court of General Sessions, Sussex County, February Term, 1911.

INDICTMENT for driving off a horse.

At the trial the facts adduced were briefly as follows: The defendant had certain negotiations with the prosecuting witness, one Elias J. Taylor, which resulted in an offer on the part of the defendant to exchange a horse owned by him for the horse of the prosecuting witness (mentioned.in the indictment) and promised to give the latter a horse rake in addition.

The prosecuting witness told the defendant he would speak to his son about it and whatever the latter wished to do would be

satisfactory to him. A short time after this conversation the defendant met the son of the prosecuting witness near the latter's house, each at the time driving the same horse above referred to. They stopped and the son stated that he was ready to trade and that the offer of the defendant was satisfactory to his father. The exchange was accordingly made on the road. The son told Coates, the defendant to drive up to his father's house and he would give him the boots which the horse usually wore to avoid cutting himself. Coates did so telling the prosecuting witness of the trade and that the horse rake was at his house ready for him whenever he called for it. The prosecuting witness, the father, according to defendant's testimony, made no objection, went to the barn and brought out the leather boots, gave them to Coates and also delivered to Coates two or three feeds of dry food for the horse; Coates telling him that he was feeding on green food. This was in the early evening, and about midnight of the same night Coates was called from his bed by the father who told him that the horse he received from Coates was not satisfactory and he wished his own horse returned to him. Taylor was told to come back the next morning, which he did bringing the said horse with him. Coates refused to return the horse, but offered to exchange another horse he had for that one upon Taylor's paying him fifteen dollars difference. This conversation took place at the barn. Taylor told Coates he had ten dollars in a certain bank which he would give him in exchange for the other horse, and would pay him five dollars later, and asked him if he had a blank check on said bank. Coates went to the house to get the check and while he was gone Taylor tied the horse at the barn and left. The following night Coates had the horse which he originally obtained from Taylor's son driven to Harrington and left there, alleging as a reason therefor, that he was afraid Taylor would break in his stable and remove the horse therefrom. Taylor's statement was that the terms of the trade were that if the horse was not satisfactory Coates was to take it back; that it was not satisfactory and it was therefore no trade; furthermore that he never authorized his son to trade for the horse and never ratified the same.

The contention of the state was, that when Coates drove

the horse to Harrington he was guilty of the misdemeanor of driving off a horse without the consent of the owner.

When the state rested counsel for the defendant moved that the court instruct the jury to return a verdict of not guilty, because the statute did not cover a case of this kind where the defendant was lawfully in possession of the horse that was driven off.

The court divided upon the question and the motion fell..

BOYCE, J., charging the jury:

Gentlemen of the jury:—In this case it is provided under *Section* 1 of *Chapter* 228, *Vol.* 17, *Laws of Delaware* (*Rev. Code* 1893, *p.* 944), "That if any person shall unlawfully, or without having first obtained the consent of the owner or legal proprietor thereof, take possession of, use, ride or drive off  *  *  *  any horse, gelding, mare, colt, ass, or mule  *  *  *  he shall be deemed guilty of a misdemeanor," etc.

Under the indictment it is charged that James H. Coates, the accused, did on the fifth day of July, 1910, unlawfully and without first having obtained the consent of the owner or legal proprietor thereof, then and there take possession of, use, and drive off a certain horse then and there being the property of Elias J. Taylor.

The evidence adduced before you from the witness stand by the several witnesses who have testified in your presence is all before you, and we shall not attempt a detailed statement of the evidence, for you have it and you will recollect it quite as well as the court.    You are the sole judges of the evidence and of the credibility of the witnesses and the weight and value of their testimony.    It is from that evidence which you have heard, considered in connection with the charge of the court respecting the law, that you are to find your verdict.

We will say very briefly that it appears to be conceded in this case that a minor son of the prosecuting witness did on the fifth day of July last year trade a horse with the accused.    It was contended on the part of the prosecuting witness that at the time the trade was made he, and not the son, was the owner of the horse, and that the trade was made without his (the prosecuting

witness') consent.   The accused, on the other hand, claims that at the time he made the trade with the son he believed that the son had authority to make the trade, and he has also testified before you—and that is not denied—that very soon after the trade was made he drove up to the home of the prosecuting witness and got the boots from the latter for the horse or colt.   You have the facts all before you.   If you find that the son, with the consent of the father, made the trade, or if the father, after the trade had been made, ratified the same, your verdict should be not guilty.   If you find that the father dissented from the trade after it had been made, and took the mare which the son had taken in exchange for the father's horse back to the accused and demanded the return of his horse, yet if instead of repossessing himself of his horse the prosecuting witness then and there, as alleged by the defendant, traded for another horse, then your verdict should be not guilty.   That is a fact for you to determine from the evidence, not for the court.   If you find from all the facts and circumstances of the case as presented to you—and the facts, as well before the trade as after, are to be considered by you— that the defendant had reasonable cause to believe, and did believe, that he was the lawful owner of the horse when he drove him away, then your verdict should be not guilty.

In order for you to find the accused guilty, you should find that he, without the consent of the owner, either directly or indirectly, did unlawfully take possession of, use, ride or drive off the horse in question.   If you so find, then your verdict should be guilty.

It is a principle of criminal law that in every criminal case the accused is presumed to be innocent until his guilt is established to the satisfaction of the jury beyond a reasonable doubt; and the burden is upon the state in every criminal case to satisfy the jury of the guilt of the accused beyond a reasonable doubt. By a reasonable doubt is not meant a vague, speculative, possible or indefinable doubt, but it is a reasonable doubt growing out of the evidence and such a doubt as would control reasonable men in the ordinary affairs of life.   If you have such a doubt as that under this evidence, then your verdict should be, not guilty

because a reasonable doubt enures to the benefit of the accused and entitles him to an acquittal.

Where there is conflict of testimony, as in this case, it is the province and duty of the jury to reconcile such testimony if they can; if they cannot reconcile it, then they may accept that part of it which from all the circumstances of the case they deem to be worthy of belief, and it is their duty to reject that part of the testimony which they deem to be unworthy of belief.

You have the facts in the case before you, with the statement of the law as announced by the court, and we leave it to you to return to this court with such a verdict as you believe under all the evidence you are warranted in finding.

Verdict, not guilty.